# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| JENNIFER BLAINE, | Case No.: 2:22-CV-02471 |
| *Plaintiff,* | |
| v. | |
| MYSTERE LIVING & HEALTHCARE, INC. D/B/A WELLSVILLE HEALTH & REHAB | |
| *Defendant.* | |

## FIRST AMENDED COMPLAINT

Plaintiff Jennifer Blaine ("Plaintiff"), for her first amended complaint against Defendant Mystere Living & Healthcare, Inc. d/b/a Wellsville Health & Rehab ("Wellsville Health" or "Defendant"), pursuant to Fed. R. Civ. P. 15(a)(1)(B), states and alleges the following:

## PARTIES, JURISDICTION, AND VENUE

1. Plaintiff is a resident of Kansas.

2. Defendant is a Kansas corporation with its principal place of business in Wellsville, Kansas.

3. The court has jurisdiction over this action, which includes claims arising under the Title VII of the Civil Rights Act of 1964 ("Title VII") (42 U.S.C. § 2000e, *et seq*.), pursuant to 28 U.S.C. § 1331.

4. Venue in this Court is proper pursuant to 28 U.S.C. § 1391(b) because Defendant is a resident of Kansas and a substantial part of the events or omissions giving rise to the claims herein occurred in the District of Kansas.

**FACTUAL BACKGROUND**

5. Plaintiff filed a Charge of Discrimination with the EEOC within 180 days of the acts complained of and filed this Petition for Damages within 90 days after receiving her Notice of Right to Sue from the EEOC.

6. This action is timely, and Plaintiff has exhausted all administrative remedies prerequisite to filing this action.

7. Plaintiff started working for Wellsville Health in September 2014, as an Occupational Therapist Assistant.

8. Plaintiff was promoted to the Director of Rehab, where she ran the rehab department for Wellsville Health.

9. As the Director of Rehab, Plaintiff participated in many resident-centered enrichment activities and led validation training to improve resident care and dignity.

10. As part of these initiatives, Plaintiff participated in special breakfasts, where she encountered Tim Sullivan, the Dietary Manager for Defendant.

11. Plaintiff felt uncomfortable around Tim, as he was prone to leering overtures.

12. Plaintiff was forced to work in close proximity to Tim during these special breakfasts, which led her to feel increasingly uncomfortable.

13. In or around April or May of 2019, Plaintiff was working the omelet station during a special breakfast, forcing Plaintiff to work adjacent to Tim.

14. Because of the station that she worked, Plaintiff's hands were preoccupied making omelets.

15. Tim noticed that Plaintiff was in a vulnerable position, and decided to grope Plaintiff's buttocks, repeatedly smacking, and slapping her backside.

16. Plaintiff was appalled by Tim's actions, frozen in stunned horror.

17. Out of respect for the residents, Plaintiff tried to compose herself and continue to serve the residents.

18. Immediately after the breakfast, Plaintiff went to a human resources representative, Ashely Washington, and reported the sexual harassment that Tim had continually put her through at Wellsville Health.

19. Ashley was disgusted by Tim's continued actions, however, she immediately told Plaintiff that "nothing will happen to Tim because he is friends with [the owner of Wellsville Health] Scott."

20. Despite the continued harassment by Tim, Plaintiff was undeterred, and went directly to Scott Averill, the owner of Wellsville Health.

21. Plaintiff reported Tim's harassment to Scott, who was annoyed by her report, became defensive, and started victim blaming.

22. Scott asked if Plaintiff had tried to "smooth things over" with her assailant or try and "talk it out."

23. Despite her complaints, Tim's harassment continued to escalate, as Tim's actions became increasingly bold.

24. Before meetings, as employees were coming into the room Tim would often pat his legs and suggest that female employees, "sit on his lap."

25. Tim would also slap female employees on the backside with papers as they passed by him in the hallways.

26. Plaintiff attempted to avoid Tim at all costs, however, at times it was necessary for her to interact with Tim.

27. During these interactions, Tim would often ogle Plaintiff, particularly at her chest.

28. Tim's harassing towards conduct towards Plaintiff and other female employees was constant, happening seemingly every day.

29. Wellsville Health did nothing to address Plaintiff's complaints or Tim's continued actions: Tim was not fired; there were no increased measures for employee safety; and despite a promise for sexual harassment training, Wellsville Health never provided that training.

30. Not only did Tim continue to work for Wellsville Health, but he also was promoted to the human resources department of Wellsville Health, which dissuaded Plaintiff from making further complaints.

31. Despite her complaints and a request to Scott, Plaintiff was even forced to work another special breakfast with Tim, who continued his ogling and gazing at her chest.

32. After this particular breakfast, Scott encountered Plaintiff and asked her, "How it went this morning?" seemingly hoping that Plaintiff would forget the traumatic experience that Scott's friend had and continued to put her through.

33. As it became increasingly apparent that Tim would not face punishment for his actions, he became increasingly hostile towards those he suspected of reporting him and more daring in his actions towards the female employees in general.

34. In or around September 2021, Plaintiff witnessed Tim grope another female Wellsville employee, Darcy Schnoor, on the backside while they worked together in the kitchen.

35. Appalled that the man who had once assaulted her in the workplace was allowed, not only to continue working for Wellsville Health, but also to continue his predatory acts towards women, Plaintiff began to relive the trauma and stress that she initially felt after being assaulted.

36. Due to Tim's continued actions, and the stress that his actions invoked, Plaintiff again raised concerns with Scott about Tim's predatory actions, restating her earlier complaints, and informing Scott that "it made her sick" to be around Tim.

37. Scott again brushed off Tim's continued pattern of behavior, offering platitudes, and also seeming reluctant to get Human Resources involved.

38. During a meeting with Scott about Tim, Tim mentioned to Plaintiff that Tim was a friend of his and a "63-year-old married man with kids", seemingly excusing his behavior or intent.

39. After her reports in September, Plaintiff noticed Scott was increasingly dismissive towards her, indicating to her that he did not share Plaintiff's beliefs that Tim actions were predatory.

40. Plaintiff told Scott that she was no longer comfortable working with Tim because of his actions. However, Scott did nothing to protect Plaintiff.

41. After Wellsville Health learned of Plaintiff's complaints and despite Scott's conclusions on Tim's behavior, Plaintiff had several conversations with female employees who informed Plaintiff that they had also been the subject of Tim's leering and inappropriate jokes, as well as another instance of Tim groping a female employee who did not report the incident, seemingly fearing retaliation.

42. A few weeks after this event, where Plaintiff witnessed Tim grope yet another woman in the workplace, it became evident that Wellsville Health, and Scott specifically, did not take her concerns, or their female employees' safety, seriously, as Tim continued working for Wellsville Health, seemingly unpunished.

43. Over the next few weeks, Plaintiff struggled to maintain her mental health, as she felt overwhelmed and anxious anytime she had to share a room with Tim.

44. Plaintiff feared not only the continued treatment of Tim, the constant ogling, inappropriate comments, and groping, but also that Tim could escalate his behavior because Wellsville Health allowed him to continue to get away with this behavior.

45. Before Tim's actions, Plaintiff loved her job, took pride in the fact that she helped create the Rehab division, and planned to stay in her position long-term.

46. Despite her plans, Plaintiff could not withstand the increasingly hostile treatment towards herself, female employees, and her complaints, and she put in her two-weeks notice on November 9, 2021, as her workplace had become intolerable.

47. Despite her notice and her reports of sexual harassment, Wellsville Health fired Plaintiff on November 12, 2021.

## COUNT I – TITLE VII HOSTILE WORK ENVIRONMENT

48. Plaintiff realleges and incorporates all preceding paragraphs.

49. Blaine is a female.

50. Blaine was subjected to unwanted groping on her backside by Tim Sullivan.

51. Blaine was constantly the subject of ogling by Tim Sullivan, as every time she had a conversation with him, he would stare at her chest.

52. Blaine also heard innumerable inappropriate comments, such as insistence on women sitting on his lap.

53. Not only was Blaine subjected to this, but she also witnessed several female employees suffer through Tim Sullivan's predatory nature, which caused her previous trauma to resurface.

54. Blaine was subjected to inappropriate and harassing treatment because of her sex, effectively creating an abusive, hostile work environment filled with insult, intimidation, and

ridicule, of which Wellsville Health was aware, as she had complained several times to owner, Scott Averill, who ignored her complaints.

55. Blaine suffered economic and non-economic damages as a result of the conduct of Wellsville Health.

56. The actions of Wellsville Health were committed with malice or reckless indifference to her federally protected rights.

WHEREFORE, Plaintiff Jennifer Blaine respectfully requests that the Court enter judgment in her favor on Count I and against Defendant Mystere Living & Healthcare, Inc. d/b/a Wellsville Health & Rehab, for a finding that she has been subjected to a hostile work environment in violation of Title VII; for compensatory and punitive damages; equitable relief; costs expended; reasonable attorneys' fees; and for such other and further relief the Court deems just and proper.

## COUNT II – TITLE VII RETALIATION

57. Plaintiff realleges and incorporates all preceding paragraphs.

58. Blaine is a female.

59. Blaine was subjected to an abusive and hostile work environment because of Tim's inappropriate leering, touching, and groping of her and other female coworkers.

60. This treatment constituted unlawful sex discrimination in violation of Title VII.

61. Blaine made complaints, to Ashley Washington and Scott Averill, about Tim Sullivan's sexual groping and leering to which she was subjected to in April or May of 2019.

62. Blaine's complaints in April or May of 2019 concerning Tim's sexual groping and leering to which she was subjected constituted a protected activity.

63. Because of Blaine's 2019 complaints, Wellsville Health retaliated against her, by continuing to subject her to Tim's inappropriate comments, and leering of her, and to Tim's inappropriate comments, leering, groping, and touching of other female employees.

64. Blaine again made complaints in September of 2021 after Tim's continued use of inappropriate comments, leering and ogling, and touching of her and her female coworkers, as well Tim's groping of another female employee of Wellsville Health.

65. Blaine's complaints in September of 2021 concerning Tim's actions towards her and others, specifically his groping of another female employee, Darcy Schnoor, constituted a protected activity.

66. Because of Blaine's 2021 complaints, Wellsville Health retaliated against her, by continuing to force her to work with Tim and refusing to discipline Tim which led to her working conditions becoming so intolerable that she felt forced to resign. Wellsville Health further retaliated against her by ultimately terminating her employment.

67. As a direct and proximate result of the Wellsville Health's actions and/or inaction, Blaine has been deprived of income and other monetary and non-monetary benefits.

68. As a direct and proximate result of the Wellsville Health's actions and/or inaction Blaine has suffered humiliation, emotional pain, distress, suffering, inconvenience, mental anguish, and related compensatory damages.

WHEREFORE, Plaintiff Jennifer Blaine respectfully requests that the Court enter judgment in her favor on Count II and against Defendant Mystere Living & Healthcare, Inc. d/b/a Wellsville Health & Rehab, finding that she has been subjected to unlawful retaliation in violation of Title VII; for compensatory and punitive damages; equitable relief; costs expended; reasonable attorneys' fees; and for such other and further relief the Court deems just and proper.

## COUNT III – TITLE VII SEX DISCRIMINATION

69. Plaintiff realleges and incorporates all preceding paragraphs.

70. Blaine is a female.

71. Wellsville Health treated Blaine less favorably than similarly situated male employees in the terms and conditions of her employment, as her male counterparts were allowed to sexually harass female employees and faced no consequences for their actions, while Blaine was the subject of constant sexual harassment before she was constructively discharged, and ultimately terminated.

72. The actions of Wellsville Health & Rehab and its agents constitute discrimination on the basis of her sex in violation of Title VII.

73. The adverse employment actions against Blaine occurred under circumstances raising a reasonable inference that her sex was a motivating and/or determining factor in the Wellsville Health's decision to treat Blaine less favorably than similarly situated male employees, subject her to a hostile work environment and ultimately terminate her employment.

74. Wellsville Health's conduct rendered Blaine's working conditions so intolerable that Blaine was forced to resign her position.

75. Despite her attempt to resign, Wellsville Health terminated Blaine's employment.

WHEREFORE, Plaintiff Jennifer Blaine respectfully requests that the Court enter judgment in her favor on Count III and against Defendant Mystere Living & Healthcare, Inc. d/b/a Wellsville Health & Rehab for a finding that she has been subjected to unlawful discrimination on the basis of her sex leading to a discharge; for compensatory and punitive damages; equitable relief; costs expended; reasonable attorneys' fees; and for such other and further relief the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff respectfully requests a trial by jury on all issues so triable.

## DESIGNATION OF PLACE OF TRIAL

Plaintiff hereby requests the trial be held in Kansas City, Kansas.

                **HKM EMPLOYMENT ATTORNEYS LLP**

                <u>/s/ *John J. Ziegelmeyer III*</u>

| John J. Ziegelmeyer III | KS No. 23003 |
|---|---|
| Brad K. Thoenen | KS No. 24479 |
| Kevin Todd | KS No. 78998 |

                1501 Westport Road
                Kansas City, Missouri 64111
                Tel: 816.875.3332
                jziegelmeyer@hkm.com
                bthoenen@hkm.com
                ktodd@hkm.com
                www.hkm.com
                ATTORNEYS FOR PLAINTIFF

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned hereby certifies that on January 10, 2023, a copy of the foregoing was served via the Court's electronic filing system on all counsel of record.

                <u>/s/ John. J Ziegelmeyer III</u>
                Attorney for Plaintiff